IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHNNY G. KEIGLEY                                                                                  PLAINTIFF

        v.                              Civil No.10-2082

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                 DEFENDANT

## MEMORANDUM OPINION

      Plaintiff, Johnny Keigley, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**    **Procedural Background:**

      The plaintiff filed his application for DIB on March 18, 2008, alleging an onset date of March 1, 2008, due to osteoarthritis status post a right hip replacement, coronary artery disease ("CAD") status post coronary artery bypass graft, obesity, diabetes, and hypertension. Tr. 13, 117-121, 152-153, 176-177. An administrative hearing was held on September 16, 2009. Tr. 22-57. Plaintiff was present and represented by counsel. At this time, plaintiff was 61years of age and possessed a high school education. Tr. 27. He had past relevant work ("PRW") experience as a telephone installer, telephone coin collector, and rental car delivery driver. Tr. 27-39, 162-163, 178-179.

On February 12, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's osteoarthritis status post a right hip replacement, coronary artery disease ("CAD") status post coronary artery bypass graft and obesity were severe, but did not meet or equal any Appendix 1 listing. Tr. 11-12. The ALJ determined that plaintiff maintained the residual functional capacity ("RFC") to perform a full range of medium work involving only occasional climbing of ladders, ropes, and scaffolds and frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. Tr. 12-16. With the assistance of a vocational expert, the ALJ then found that plaintiff could return to his PRW as a telephone installer, telephone coin collector, and rental car delivery driver. Tr. 16.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on May 12, 2010. Tr. 1-3. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 7, 8. Plaintiff has also filed a motion for submission of new and material evidence and the Administration has filed a response. ECF. No. 10, .

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial

2

evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

  A. **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national

AO72A
(Rev. 8/82)

economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Records dated prior to Plaintiff's alleged onset date reveal that he underwent heart bypass surgery in 1996 and then again in 2002, with stenting of his right coronary artery and circumflex. Tr. 225, 317-329, 340-348. In addition, he underwent a saphenous vein graft to his LAD and

4

diagonal. Pulmonary function studies conducted in 1997 showed moderate obstructive ventilatory impairment, and Plaintiff carried diagnoses of chronic obstructive pulmonary disease and emphysema. Tr. 298, 302, 337-338. Records also reveal that Plaintiff was suffering from hyperlipidemia, diabetes mellitus, and hypertension. His cardiologist, Dr. Timothy Waack noted that he had a preserved ejection fraction of 50%, but continued to experience shortness of breath with exertion. Tr. 225, 228, 317, 329.

On July 15, 2008, Plaintiff underwent a disability physical with Marie Pham, a nurse practitioner for Dr. Rebecca Floyd. Tr. 240-243. He complained of lower back pain. Nurse Pham noted that Plaintiff worked as a phone collector and had a bad limp that prevented him from climbing into his van. She also noted his history of diabetes, hypertension, CAD, hyperlipidemia, right hip replacement surgery, and multiple coronary artery bypass surgeries. At this time, Plaintiff complained of dyspnea with exertion, but denied experiencing chest pain. He also reported some numbness and swelling in his left leg, which was the leg the vein was harvested from for his bypass surgery. An examination revealed a negative straight leg raise test, normal muscle strength, no muscle atrophy, no sensory abnormalities, and a steady gait. Plaintiff was able to hold a pen and write, touch fingertips to palms, oppose thumbs to fingers, pick up a coin, stand/walk without assistive devices, walk on heel and toes, and grip normally. He could not squat and arise from a squatting position. X-rays of Plaintiff's right hip revealed lucency along the superior margin of the acetabulum that could represent osteolysis (degeneration of bone tissue) or loosening. Tr. 239. Nurse Pham also noted a slightly decreased range of motion in Plaintiff's right hip with ileosacral joint tenderness. An x-ray of his lumbar spine showed mild disk space narrowing of the lower thoracic spine. Degenerative changes of the posterior

AO72A
(Rev. 8/82)

elements of the L5-S1 were also noted. Tr. 239. Nurse Pham diagnosed Plaintiff with ileosacral joint tenderness and assessed his limitations as moderate with regard to climbing, excessive squatting, and bending at the waist. Dr. Rebecca Floyd signed off on this assessment. Tr. 243.

On August 18, 2008, Plaintiff was evaluated by Dr. Ted Honghiran, an orthopedist. Tr. 247-249. He reported his history of total right hip replacement surgery in 1995, leaving him with occasional right hip pain and an inability to squat down or bend over. Plaintiff also described his history of heart problems, bypass surgeries, and diabetes. He reported chronic swelling in his left leg. Dr. Honghiran noted that Plaintiff was moderately obese, walked with a slight limp, and exhibited a limited range of motion in his right hip. However, he documented no significant pain, a negative straight leg raise, and normal reflex and sensation. Accordingly, he concluded that Plaintiff would be limited with regard to climbing stairs, walking for long distances, and squatting. Dr. Honghiran noted Plaintiff's complaints of chronic lower back pain, which he attributed to degenerative disk disease. He then opined that he did not believe Plaintiff would be able to return to regular employment, given his age. Tr. 247-248.

On August 20, 2008, Dr. Bill Payne completed an RFC assessment. Tr. 252-259. After reviewing Plaintiff's medical records, he concluded Plaintiff could perform a full range of light work. Tr. 252-259. This assessment was affirmed by Dr. Steve Owens on October 2, 2008. Tr. 267-269.

On October 28, 2008, Plaintiff followed-up concerning his right hip. Tr. 350. He told Dr. Claude Martimbeau that the pain returned approximately two years prior and was particularly painful at the end of the day after he had been active. An examination showed good range of motion. Rotation and extension were not painful. However, full flexion, external rotation ,and

internal rotation were painful all around the hip. X-rays showed good alignment and good position of the prosthesis with no evidence of loosening of both compartments and no evidence of wear over the weightbearing surfaces. Dr. Martimbeau diagnosed Plaintiff with right hip pain and recommended a period of rest for a month using crutches. He ordered no weightbearing or toe-touch and prescribed Arthrotec. Tr. 351.

This same date, Dr. Martimbeau completed an attending physician's statement. Tr. 388. He diagnosed Plaintiff with post-traumatic osteoarthritis of the right hip that would require him to take unscheduled breaks during an eight-hour workday. He also opined that Plaintiff would only be able to perform "sitting down work.." Tr. 388.

On November 2, 2008, Dr. Waack completed an attending physician's statement. Tr. 270. He stated that he had treated Plaintiff since November 14, 1996, for coronary artery bypass grafts, hypertension, diabetes, and hyperlipidemia. Dr. Waack indicated that Plaintiff would need to periodically elevate his feet due to edema. He was uncertain as to how many days per month Plaintiff would miss work due to his impairments or treatment. Dr. Waack did state there was a significant likelihood of a worsening in his heart condition in the future. Tr. 270.

On November 25, 2008, Plaintiff followed-up concerning his right hip pain. Tr. 352-353. Dr. Martimbeau noted quite a lot of improvement. He had been resting his hip and now was almost pain-free. Plaintiff did not feel he needed to take his medication. An exam revealed a good range of motion without any pain and no limp. Dr. Martimbeau diagnosed Plaintiff with healing right hip pain. Tr. 352-353.

On August 13, 2009, Plaintiff returned to Dr. Waack's office doing "reasonably well." Tr. 384. He complained of shortness of breath with minimal exertion, but denied experiencing

angina, arrhythmias, PND, or orthopnea. An examination revealed clear lungs, a regular rate and rhythm, and an S4 heart sound, but an EKG was unremarkable other than revealing nonspecific ST changes. His lower extremities revealed 2+ edema on the left and none on the right. Plaintiff indicated that the edema went away when he elevated his legs. At this time, his blood pressure was 140/70. Cardiovascularly, Dr. Waack believed Plaintiff was stable, but did need risk factor modification in the form of further scrutiny of his diabetes. He advised Plaintiff to follow-up with Dr. Howell. Tr. 384.

In spite of the above evidence, the ALJ concluded that Plaintiff could perform a full range of medium work involving only occasional climbing of ladders, ropes, and scaffolds and frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. By definition, a full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday. *See* SSR 83-10 (1983). We note, however, that Nurse Pham assessed Plaintiff with moderate limitations with regard to climbing, excessive squatting, and bending at the waist. Dr. Honghiran also opined that Plaintiff would be limited with regard to climbing stairs, walking for long distances, and squatting. Further, Dr. Martimbeau indicated that Plaintiff would only be able to perform sedentary work. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight).

The ALJ seems to dismiss Dr. Martimbeau's assessment because she can find no evidence in the record to show that Plaintiff carried a diagnosis of osteoarthritis. However, an x-ray of his hip in 2008 revealed lucency along the superior margin of the acetabulum that could represent osteolysis or degeneration of the bone tissue. Tr. 239. By definition, osteoarthritis is

8

a degradation of the joints. As such, we find that the 2008 x-ray of Plaintiff's hip showing probable osteolysis is sufficient to support a diagnosis of osteoarthritis when taken in combination with Plaintiff's prior hip replacement surgery and his continued complaints of pain in the joint. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).

The ALJ also concluded that Dr. Martimbeau's assessment is inconsistent with his own treatment records because his very last treatment note indicates that Plaintiff's hip pain had improved. While we do note that Plaintiff's hip pain did seem to improve, it is also significant to note that this was only after Plaintiff was placed on crutches for one month and allowed no weight bearing activity. The record does not indicate how Plaintiff's condition progressed once weight bearing activity was reinstated. As such, we believe the ALJ should have considered this fact prior to concluding Plaintiff could perform a full range of medium work involving frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.

Likewise, the ALJ concluded that Dr. Waack's assessment of Plaintiff was inconsistent with his treatment notes because Dr. Waack commented that Plaintiff was cardiovascularly stable. His condition may have been stable, but his blood pressure continued to run high, Plaintiff's shortness of breath had increased such that he was experiencing it with minimal exertion, and Plaintiff's ejection fraction rate was noted to be only 50%. *See Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991) (holding ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects). Although this ejection fraction rate is not low enough to meet the regulations threshold, we do believe it is evidence of an ongoing impairment that would result in limitations. And, given Plaintiff's age and medical

9

history, it is not unreasonable to conclude that Plaintiff's heart condition would limit his ability to perform a full range of medium work. Accordingly, we believe remand is necessary to allow the ALJ to reevaluate the medical evidence and revisit her RFC assessment.

### IV. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 31st day of May 2011.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE